In an interesting case, and important, we'll hear counsel in United States v. Ozcelik May it please the court. My name is Solomon Weisenberg. I represent the United States v. Ozcelik, and I'm here today with my colleague, Adrienne Weisenberg, who is with me on the brief. Your honors, there are three issues really before this court when we're talking about the sufficiency questions here. Number one, do words mean anything? The words on a tape recording, the words in the statute, the words in the judge's jury charge. Number two, does law mean anything? The presidential law of this circuit, specifically Heffler, Supreme Court precedent, the laws of Congress. Finally, will this court legitimize the government's failures in this case at the trial level? Because make no mistake, the government failed to prove the official act element. The government failed to prove the aiding and abetting, and the government failed to prove the harboring element. I'd like to start with aiding and abetting, because those words come straight from the court's charge. The court charged the jury, of course, you may not find the defendant guilty of aiding and abetting unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by someone else and that the defendant participated in its commission. Now that's straight from the case law of this circuit. That's straight from Stan Defer. Every element of the offense had to be committed by somebody else. End of story. The government has to prove that someone else committed each element of the crime, and then that Hakan Asilik joined in. Your honors, they're not even close here. They're not even in the ballpark. I started with aiding and abetting for a reason when I'm talking about the elements of the offense. Under 201B2, the basic bribery statute here, the bargain floor official act must be the appellants. The words of the statute, the legislative history, the case law are clear on this. Unless the government can prove, unless, with one big exception, and that's the aiding and abetting box, unless the government can prove aiding and abetting by appellant of another's official act under the Stan Defer test, which says you have to prove somebody else committed every element of the offense. Now the government has proceeded in its indictment, in the trial, in its brief as if it doesn't really matter. We can either show appellant took the money for his own official act or for somebody else's official act. Well, wait a minute. Help me here. I thought there was testimony from Tuncer, if that's how you pronounce it, that your client told him that he had paid money to his friend who had undertaken to secure the necessary record change. Now, was that not, isn't that not evidence? Or am I wrong in understanding that that's what Tuncer testified to? You're not wrong in understanding if it's the recording we're thinking of, it's the final, I think the final recording after the meeting in the parking lot. But understand, Defer is not enough to say I had friends in immigration or I gave money to friends in You've got to show that somebody else, if you're talking about aiding and abetting, not Haqqanah Sealy, somebody else committed all the elements of the offense. Now, if you're going away from aiding and abetting and you're just talking about Let's just talk about aiding and abetting, because I think that's your most difficult point here. You don't have to put a name on him, do you? There's testimony that there was somebody there who had the responsibilities with respect to the records and had undertaken to change the records. Isn't that enough? Under the facts of this case, it is not enough, because all you literally have, and we dealt with some detail in the brief with the question of how much friends in INS were even mentioned, and it's much, much less than the government said. But we understand we're operating under a Jackson versus Virginia standard. But all you really have is, according to Mr. Tuncer, in a tape-recorded conversation five months before the charging date and the indictment, the statement that I have friends in INS who are going to extend your visa, and then the statement saying that money was given to somebody who would work from inside the system. All right. You agree that the government is not required to prove the identity of this human being who is committing the action? They don't have to prove the name, correct, but they've got to prove that another human being committed each... They have to prove the... You agree, then, that what they have to do is prove the existence of some other person, short of the identity of that person in the system? That's correct, Your Honor. So the question, then, is why are the words of Mr. Oselec concerning the existence of that person not enough for purposes of sufficiency to show, to present a question to the jury of the existence of that person, and therefore carry the date for the government, if they can prove it beyond a reasonable doubt, of the aiding and abetting theory? Because of the words in the trial court's own charge to the government. You've got to prove that another actor committed each and every element of the offense. And what elements are missing here, is the question, I guess. You have to prove that there's another human being. First of all, I'm not sure that it's enough just to say I have friends in immigration. Certainly, it could be used against Mr. Oselec, but you've got to prove that there's a person in immigration who's performing an official act who knows that he or she is getting money through Mr. Oselec, who's not just on his own, doing something that he thinks is legitimate. You've got to prove the crime with respect to that person and all of its elements, and then say, in some minimal way, and I agree it only has to be minimal, just have to have knowledge and action, that Mr. Oselec tell. But it's just not enough to have one statement that I have friends in immigration. But that's not my understanding of what the evidence shows. Did not Tuncer say, I'm talking about later now, after he gets the money, did he not assure Tuncer that he had contacted his friend in this office and that his friend had undertaken to fix the records? Did he not say that? In the final conversation, he was not that explicit, and he did not explicitly speak about INS. There are almost, in our view, no references to INS. There's a real question about whether or not it's the lawyer or INS. And I was going to ask you that, but go ahead and answer Tuncer. But we concede that the jury could find, because we have to live under Jackson v. Virginia, that there was somebody who was working from inside the INS. But my recollection is, on that last brief phone conversation, all that Mr. Oselec says is that he did what he was intended to do, and the intent was what the actions were of the person in INS. It's just not enough to understand deeper. You mean the jury could not infer from the fact that somebody employed by INS was offered cash for the purpose of falsifying the records, you couldn't infer that he knew what he was doing and that wasn't cricket? I don't believe you can infer it based upon the minimal conversations on this record. If you look at that last conversation, Oselec is basically trying to get this individual off of the telephone, and I don't believe it proves each and every element. I don't even believe it's enough to say I've got a friend in INS. You've still got to prove a crime beyond a reasonable doubt like you would anything else. You've got to prove that there was an actor who committed all the elements and that a con aided him. You don't have to have a precise identity, but you've got to have some indication that he even existed. It's not made up out of whole cloth. We understand your position. Maybe better talk about concealment or shielding. Harboring, yeah. Pardon? You want to talk? Yes. Yes, Your Honor. With respect to harboring, I'm unaware of any case. I was not able to The court affirms the harboring conviction. I'm aware of any court of appeals case, even the Fifth Circuit case cited by the government, where somebody for mere words alone, not even close to the immigration officers knocking at the door or being there at the rock pile, gets convicted for harboring based upon these kinds of avuncular advisory words that the defendant uttered. Let's assume that what you have here are mere words. I'm not conceding that point, but for purposes of argument, assume that. Does the fact that Mr. Ossielet is an immigration official add something to the equation that would not be there? Were the mere words uttered simply by a neighbor or an ordinary citizen? I don't believe that it does, because clearly, for two reasons. Number one, Mr. Ossielet is clearly not going to be somebody who's about to arrest somebody who's fleeing. Recall that it was Mr. Tunker through his friend who initially contacted Mr. Ossielet. More importantly, it may mean, and I'm sure that it does mean, that Mr. Ossielet did something he wasn't supposed to do. I'm sure he violated regulatory statutes. I'm sure he should be fired for it, but there really can't be a separate rule of law on harboring for when the person happens to be a customs agent. If you look again at the facts of this case, Your Honor, there's no chance whatsoever in the first place that he's going to be apprehended by Mr. Ossielet. Ossielet is just saying, lay low. Let's see how far your argument that mere words alone can't prove a violation of the statute. Suppose Mr. Ossielet said to Tunker, I have a friend who has an apartment at 2100 North Broad Street, and if you go there and say I sent you, he will let you stay there for the period at issue. Would that constitute enough to violate that provision of the statute? It would certainly come closer. You might certainly have, because there you're getting into potential aiding and abetting for the act of physically harboring somebody, and there are some cases where the defendant clearly was already harboring through employment or through Well, I'm leaving that out, but I'm just trying to see whether we can say mere words alone are not enough, because I gather that there are situations in which mere words would be enough. There could be situations where mere words would be enough, and that would be an example that would certainly be closer than the one we have here. Okay, so all you're saying is that the mere words here aren't enough. That's correct. The mere words So we would be incorrect. Let me put it another way. We should not be considering, and you're not asking us to adopt some kind of a test that would say mere words are insufficient. In all circumstances, no. And in fact, some of the other jurisprudence from other circuits certainly would accommodate mere words so long as they substantially facilitate it. Wouldn't that? I think that they would, particularly if you're talking about go next door and knock three times and tell them Joe sent you, and you can be harbored. But just to say, hey, by the way, you should stay low, is something of an entirely different nature. Assuming that mere words, that these mere words are not enough, how about aiding and abetting here? I mean, clearly, he, by bribing the agent to falsify the documents, he shielded, he aided and abetted in the shielding of this man from the relevant authorities. Did he not? The bribery, I'm sorry, your honor, the bribery is in the... Well, I understand that you say there's not enough to convict him, but not enough to prove that he took the money, gave it to his friend in the INA and who undertook to set to fix the documents so that he wouldn't get, so that this guy wouldn't get caught. Not enough under aiding and abetting, right. But assuming there was enough evidence to prove those facts, doesn't that violate the harboring and shielding statute? I don't think that it does. Why not? I think that the bribery has to do with doing something in return for something else. You're still not harboring anybody. You're not literally shielding them. You're not harboring anybody. I don't think that it would, but even if it did, it's still assumed you've got enough evidence to meet the Stan Defer test for aiding and abetting. Thank you very much. Your red light is on. Is that okay with you? Okay, thank you. We'll hear from the government. Good morning, your honor. May it please the court. I'm Assistant United States Attorney Saboita Kamasoli, and I represent the government aptly in this matter. Ms. Kamasoli, I read this brief, these briefs, and I said to myself, how do we know that Oselic isn't making all of this up? That he, there isn't anybody in, he doesn't have any inside connections. He hasn't done this. What evidence, just evidence, did the government produce that there really is someone in the inside that was willing to change the papers? Thus far, the defense has not raised the issue that this might have been an entire sham. Well, they've said there's insufficient evidence. And it seems to me that goes to, I just want to know, what did the government, what evidence did the government produce? The evidence comes from Oselic's own words. And he said on several occasions, not just in the last conversation, that he had friends within INS who would fix the status within the system. And the government further investigated. Does that prove that he did? The government, well, to be a completed crime of bribery, we don't have to show that the thing was actually accomplished. The only thing we have to show is that an agreement was made. No, that the thing was actually attempted, even. That there's somebody there that he contacted. Correct. But the crime is actually completed when he offers to do it. And it was certainly completed. Well, did he offer to do it? He offered, he offered Hunser to, he said, give me money. And I frankly still don't know whether that money was supposed to be for the lawyer or was supposed to be for the, I can't figure out. Well, I believe the jury rejected the theory that it was for the lawyer. Let me piggyback on to Judge Slaughter's comment and question. When I read the briefs, and this may be my bias as an old prosecutor, I thought what the government is hoping and hoping for is that they are eventually going to find this person, they're going to flip somebody, they're going to get some cooperation, and it never developed. And they are stuck with the evidence they got. That was what I thought. As your Honor knows from the facts of the case, when Oslik was arrested, he was questioned and he denied everything. Well, in fact, there was a bit of a delay between the taped conversations and his eventually being scarfed up and charged. And there may have been some hope on the part of the government that something else would happen. I think so. As you know, the government, there was testimony in trial that they looked into the computer database to see if there was any stamp indicating that someone had looked into Hunser's status and the results were inconclusive that the computer... So, in other words, they didn't find, I mean, he says there's not enough evidence and we're saying to you, where's the evidence? Where's the beef? It's from his own words that he promised he could have his friends in immigration do this. And I do believe that's enough. What kind of evidence is that? I mean, that he made any effort to do it. Well, all he has to do is make the offer in return for money. Under the words of the statute. Well, but he has to have somebody's official act. Well, he's promising an official act to be done. Not his official act. Well, the government... The official act of whom? The official act of his friends in INS to change the status. Who may not exist. Well, but he's... Have you shown that those friends in INS even exist? Well, by his very own words they exist. So, that's your proof. That is your only proof, is it not? That is the only evidence, if you will, from which a jury could, in your view, according to your position, reasonably infer the existence of another personal person. Yes. His statement. Yes, but not only do I think that's enough for aiding and abetting, I think it's enough for conviction under the statute under at least two different theories. Under subpart A, being influenced in the performance of any official act. His official act within INS to convince his friends in INS to do this. And under C, because he's been induced to do an act in violation of his official duty. And I think the best case on point there is the Gigilli case, which was a federal agent who was solicited with a bribe to try to get a state prisoner released from prison through escape. And the federal agent had no authority whatsoever over the state prisoner. But it was within his official duty not to do such a thing, and therefore he violated his official duty. Under subpart A, if I could talk about that for a minute, I think... Go ahead. No, I'm so... I'm so... Yeah, I'd like to explore your B1A theory, the official act. Yeah, B2A. Because I'm still not clear on it. Whose official act is in your chart? It can be two people's official act, and I'll explain why. All right, let's start with O'Seeley. Okay. Alternatively, you're contending it would be his official act, is that right? Correct. How under the definition of official act here could it be his? It could be under the part of the official act definition, which states, or in such officials' place of trust or profit. And I cite for that the Parker case, which is from the Fifth Circuit, which I think is factually similar to this case, and more so than the Heffler case. In Parker, it was a law clerk for the Social Security Administration who had no authority to do the thing that she did in exchange for the bribe. She was forging a judge's signature on false orders in order to give Social Security benefits to people who did not otherwise deserve them. And she was charged under this statute and convicted, and the evidence was found sufficient... But she did something. I mean, she did something. What did O'Seeley do? That's correct. Her crime, however, was complete when she made the offer, when she said, I will do this for you in exchange for money. That's the conclusion. But they had proof that she did it. And here, there's a vacuum. But I believe that what the bribery statute is aimed to counteract is the appearance or the perception, not just the actual fact, that government decisions are for sale. And here, there was certainly the perception that a decision was for sale, and it was that perception in Tuncer's mind, and certainly in the mind of the agents when they began investigating it. A decision was for sale. And that's certainly what the bribery statute is intended to... Did the indictment talk about O'Seeley's own official act? It did, and it talked about using his friends in immigration as well. It did specifically refer to using his contacts. And you say it could be somebody else's official act? I think in answer to Judge Smith's question, you said it could either be O'Seeley or... Or the person he importunes on his behalf to do this for him.  Only from O'Seeley's own words. So... But when you say only... I think that's enough. Usually an admission by a defendant... I realize this was a testimony about an out-of-court admission, but normally an admission by a defendant is pretty strong evidence. I believe so, and actually there are several recordings that collaborate Tuncer's testimony that in their first conversation in October of 2004, O'Seeley told Tuncer, now this is not on tape, it comes from Tuncer's testimony, that he had two friends who worked at INS who would change his visa. Later in March, and there's a monitored call in which O'Seeley says he has a lawyer friend, which defense makes much of, there's a March 23rd phone call... Yeah, so what is the government's position? That it was money given for a lawyer? To represent him? Or for money given for these people who are nebulous? It's the government's position it was absolutely not for a private lawyer to be retained on Tuncer's behalf, and I believe the jury certainly rejected that defense, and Judge Hochberg found that O'Seeley perjured himself on the stand and gave him an obstruction of justice bump-up at sentencing because she believed that the jury rejected that entire version of events. But there's more than one conversation where he offers his friends assistance. On March 23rd he says he has people on the inside who will do this for him. On March 24th he says there's someone else who will do this for you, the person from the INS. And Tuncer asks him, do they work at the INS? And O'Seeley does not answer the question yes or no. He's very vague. Yes, he says don't you mind, I can't tell you you're going too deep now, but they will do it from within the system. And I do believe that that is enough by O'Seeley's own words, that there's proof that someone else would do this, but even assuming there isn't, the crime has been committed. If there, wait a minute, if there really isn't any such person or wasn't any such person, do you have a, have you proven each and every element of the case? I think that that is by definition a bribe because he has demanded, he doesn't even have to receive the money, he has demanded the money in return for being influenced in the performance of any official act. It's the promise of the official act. Yeah, but there isn't an official act. What is the official act if you're saying that the proof is insufficient to show that there was somebody else who did violate his or her official duty? Well, there are two things. First of all, I do believe the crime is completed when the promise is made in exchange for money, regardless of whether it ever gets done. And Oslik's own words, by the way, told Tuncer it could take months. You know, this could take five months, two months, we don't know how long it could take to happen. Second of all, when you look at subpart C, Oslik is being induced to do something in violation of his official duty, that certainly is a violation of the statute because he's taking money in the promise of changing immigration records. I don't know that that's the position that the government took in the indictment. You may be perfectly right that that would be some kind of an offense, but I'm not sure that the indictment charges that. I know the indictment charges A, B, and C. It does. It doesn't, I don't think it gets specific about C. It charges A, B, and C at page three of the papers in the Blue Brief. I do know the jury was charged on A, B, and C as well. And the jury could certainly find him guilty based on something that the government did not argue specifically for in closing. Would you turn to the harboring, if my colleagues are willing to have me suggest that you switch to the other account for which Mr. Oslik, on which Mr. Oslik was convicted, i.e. the harboring, based on the words, you should lay low. I mean, that's all you have, right? Well, actually, no, I find it's not just lay low. In fact, the crucial words that I believe Oslik said is he instructs him, look, I know your address where you're residing is different from your official address. And he basically says, do not tell anyone of your new address. Do not upgrade, I'm sorry, do not keep immigration up to date about your whereabouts. And that's harboring? I believe it's shielding from detection because Oslik knows, as an immigration officer, how to follow the law. He knows all about the immigration laws. He knows that aliens have a duty to tell the government where it is they are legally residing. And he's telling Tuncer to violate that duty so that it's difficult for immigration to find him. So disappear, don't tell anyone what address you stay. Right? That's correct. And at trial, Oslik's supervisor testified that as an immigration officer, Oslik cannot tell people to obey the law and he cannot tell people to disappear. And the distinctions that I believe the defendant is making here don't appear in the case law as being any distinction of difference that there has to be an imminent threat of immigration arriving. I don't see that in the case law. I also don't see that the shielding has to be explicitly tied into a smuggling or to a workplace environment. Do you know of any case that takes that provision of the statute as far as you would take it? Mr. Weisenberg said this would be the first such case. Is he wrong on that? Well, I disagree because I think the Rubio-Gonzalez case could arguably be even less there. And what did they say they would do there? He was at his workplace and he saw immigration arrive and he ran towards two illegal immigrants who were working and the testimony is he was waving his arms at them and the immigrants testified that he said to them, immigration, immigration is here. That's all he said. He was the employer, he was the boss. He was the boss. He was the foreman, but he wasn't the owner. And he never even said to them, run away. He just said immigration is here and they ran. Well, with his hands in the air. Well, I mean, the implication is get out of here, skidoo, I guess. Isn't that very, I mean, there's an imminent situation in which immigration is about to knock at the door and he says get out of here. Isn't that very different from telling somebody to lay low or disappear? Well, I think Osillick knows that immigration will very soon be at Tuncer's door. Well, I don't know. Immigration doesn't act so fast as far as I can tell. No, it took them about five months. Well, that's a little different than being at the door. But I don't read into any of the case law a requirement of imminence. Well, you have to do something to harbor or to shield. So what should the test be? Substantial facilitation? That's something that two circuits have agreed to so far, the second and the fifth. What's interesting here is... Rubio-Gonzalez is the fifth circuit case. That's correct. And didn't they essentially use the substantial facilitation? They used that test here actually in his trials. Is that test met here? I do believe the test is met here. He substantially facilitated or at least attempted to substantially facilitate Tuncer's remaining in the country. But if you look at what the jury was instructed in this case, the judge instructed them on the dictionary definitions of what shielding is and what concealing is and basically said it's to protect someone from detection. And I think that definition, because there is no term of art here, a dictionary definition would be enough. The issue here is whether there's sufficient evidence. Correct. And at least as to that, not mistaken jury instructions, right? That's absolutely right. Okay, so then our question, at least my questions, were directed to the evidence and not to the judge's charge on that count. There's an issue as to official act charge. Well, the defense has actually waived that point in their brief. Wait, what point? The insufficiency of the evidence? No, no, no, no, I'm sorry. The jury charge question in point three. Oh, yeah, well, but you answered the question. Let me go back. The question was with respect to the evidence. You answered with respect to the charge. I then said that I don't think the charge on that count is at issue. I agree. And let me tie it back in just to say that the most crucial piece of evidence is Osilik's instructing Tuncer not to update his address with INS and to live elsewhere and disappear. Okay, I think we understand your position. Thank you. Are there any further questions? No, no, thank you very much. Thank you very much. Mr. Weisenberg? Thank you, Your Honor. I want to focus on, in my short time, on something that Judge Tableton brought up. Ebony, what do we have, 3 minutes? Okay. Something that Judge Tableton brought up that has to do with that last conversation because it is important, and I'll read it to you. I'm reading from my brief, but it's from that final conversation. Mr. Tucker says, I mean at the beginning. I mean after the phone call. That's not after the meeting in the parking lot. It's after the phone call. I mean at the beginning. I mean after the phone call. You had a conversation with the guy, right? I mean he did start something, right? The procedure. In quote. Oselick says, I guess so. I mean after that day, I have contacted the people in question for you, but then I don't know. You should be the one receiving news. Remember, that standeefer test, that tough test, is what the judge read to the jury. You may not find a defendant guilty of aiding and abetting unless you find beyond a reasonable doubt that every element of the offense is defined in these instructions was committed by someone else. And then the defendant participated. And all you have is a couple of references to friends at INS. And those aren't even admissions about the defendant himself. They're about somebody else. And they've got independently show. They don't even come close here. All the elements are committed. With respect to harboring. What's the significance that he wasn't talking about himself? He was talking about somebody else. I don't understand that. Well, it's one thing to make. I'm not sure. I'm not sure. But it's one thing to make an admission about yourself. And to say that I did something. That's a flat out admission about your own conduct. It's another thing to be the sole proof that every element of the offense by somebody else has been proven to say that this defendant said I have a friend in the INS. And that was a point I was making. Okay. With respect to harboring, one reason you don't have anything like this in the case law is that no U.S. Attorney's Office that I know of has been brazen enough to bring a case like this based upon somebody mentioning over the phone you only met the defendant one time that you should lay low or not change your address. Well, in fairness, there are also no reported cases that I saw that involved an immigration officer, an INS officer as the actor here either. All the reported cases I've seen have involved a neighbor or a citizen or an employer or someone like that. That's true. I just don't think that's a distinction. That is fair. But I don't think that's a distinction that can be made in law as to what is harboring and what isn't. With respect to the government, it's true it's in the jury charge about aiding and abetting. But it's very clear by the time of the prosecutor's closing statement, he's basically telling the jury Asli keeps saying he's not involved, but he's the only one we know is involved. I mean, the government has essentially made that point by the time of closing. And one reason they have to make it is because they don't put in any evidence that Asli ever did anything with the money, that he spent it, that it was found on him. And the evidence is not inconclusive as to whether or not he ever checked the computer. The evidence was there's a computer within customs that stamps any time you check on somebody's immigration status and that Asli had never even checked on the status of Tunker. I see that I'm out of time and will respond to any questions Your Honor still have. Well, how about this? She says her best, the best thing on the concealing count is that he told this fellow, don't tell the INS about your new address. Keep yourself protect. Is that not protect some protecting somebody from detection? I don't believe under the case law that that that that those kind of words alone in that context can constitute harboring or concealment. And basically what happened there was they're on the phone and Tunker says something like I've got a new, I've got a new address and the INS doesn't know about it. And he says, good. I mean, it's it's it's basically throw away words from a couple of conversations. There's nothing that comes close to it that I know of in case law that comes close to saying that those kind of things would be harboring under the statute. Thank you very much. Thank you. We'll take this interesting matter under advisement.  And we'll hear counsel in the next case. Is that all right?